United States District Court
Southern District of Texas
**ENTERED**
September 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TIMOTHY FOLEY, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-CV-00111 |
| | § | |
| COASTAL COMMUNITY FEDERAL | § | |
| CREDIT UNION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss").  *See* Dkt. 18.  After carefully reviewing the Motion to Dismiss, the response, the reply, the First Amended Complaint, and applicable law, I **RECOMMEND** that the Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Timothy Foley ("Foley") served as the President and Chief Executive of Coastal Community Federal Credit Union ("CCFCU").  According to the First Amended Complaint, in the Spring of 2018 Foley began investigating some suspicious loans made by CCFCU.  He allegedly discovered a series of fraudulent loans that violated CCFCU's bylaws and the Federal Credit Union Act.  Foley claims that in May 2018 he communicated to CCFCU's Board the extent of the fraudulent loans, and informed the Board that he would be reporting this information to the National Credit Union Administration ("NCUA"), CCFCU's regulator.

Due to Foley reporting the fraudulent loans, CCFCU had to charge off large sums from June 2018 through October 2019.  All told, the charge-offs amounted to a little more than $1.6 million.  Instead of being applauded for uncovering fraudulent loans issued during his predecessor's tenure, Foley contends that CCFCU's Board Members got upset with him because the Bank incurred losses from the charged-off loans.  Foley claims that he asked for permission to report the fraudulent loans to authorities for possible criminal investigation, but the CCFCU Board denied his request.

In October 2019, CCFCU's Board issued Foley a written evaluation, which criticized him for significant charge-offs incurred as a result of the fraudulent loans.  Foley claims this criticism was unfounded since the charge-offs were a direct result of his reporting suspected fraud to NCUA.  A month later, in November 2019, CCFCU's Board terminated Foley's employment, telling him that he was being fired for the reasons set forth in his written evaluation.

Foley then filed this lawsuit alleging CCFCU's actions constitute unlawful retaliation under the Federal Credit Union Act, codified at 12 U.S.C. § 1790b.  CCFCU has moved to dismiss the lawsuit under Federal Rule of Civil Procedure 12(b)(6).  CCFCU makes two arguments.  First, CCFCU asserts that the First Amended Complaint fails to allege any facts that show temporal proximity between Foley's whistleblowing activity and his firing.  Second, in the event I allow the Section 1790b claim to proceed, CCFCU argues that Foley is not entitled to recover attorney's fees or punitive damages.[1]

---

[1] Although CCFCU moves to dismiss Foley's claim for punitive damages, I need not rule on this argument.  This is so because Foley has not asserted a claim for punitive damages in the First

### RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."  *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotation marks and citation omitted).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679. In deciding a motion to dismiss under Rule 12(b)(6), I must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts as true."  *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation

---

Amended Complaint.  *See* Dkt. 11 at 9.  Indeed, in response to the Motion to Dismiss, Foley expressly states that he "does not seek punitive damages in [the] First Amended Complaint."  Dkt. 20 at 3 n.1.  As I have previously recognized, "[w]hen a plaintiff fails to defend or pursue a claim in response to a motion to dismiss, the claim is deemed abandoned."  *Luhellier v. Oyster Creek, TX*, No. 3:18-CV-00281, 2019 WL 3419016, at *4 (S.D. Tex. July 10, 2019) (internal quotation marks, ellipsis, and citation omitted).  Thus, to the extent that any portion of the First Amended Complaint could be construed as a claim for punitive damages, that claim is deemed abandoned and is no longer before the Court.

marks and citation omitted).  At the same time, I am not required to "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. Inspire Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

It is important to keep in mind that a Rule 12(b)6) dismissal is the exception rather than the rule.  As the Fifth Circuit has lectured repeatedly, Rule 12(b)(6) motions to dismiss are "'viewed with disfavor and [are] rarely granted.'" *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quotin*g Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)).

## ANALYSIS

### A.      Does the First Amended Complaint Sufficiently Allege a Causal Link Under Section 1790b?

Section 1790b of the Federal Credit Union Act has a provision protecting whistleblowing employees of an insured credit union against retaliation.  It provides:

> No insured credit union may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to the [NCUA] Board or the Attorney General regarding any possible violation of any law or regulation by the credit union or any director, officer, or employee of the credit union.

12 U.S.C. § 1790b(a)(1).  Unlike anti-retaliation provisions in other federal employment discrimination statutes, such as Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act, there is a paucity of case law addressing Section 1790b.  Remarkably, no district court in the State of Texas has ever discussed Section 1790b, and the Fifth Circuit has addressed it only once.  *See Schroeder v. Greater New Orleans Federal Credit Union*, 664 F.3d 1016, 1021 (5th Cir. 2011).  Drawing on Title VII

4

precedent, the Fifth Circuit in *Schroeder* held that a plaintiff bringing a Section 1790b case must show: (1) he engaged in an activity protected by the anti-retaliation statute; (2) the defendant subjected the plaintiff to some materially adverse employment action; and (3) a causal connection existed between the protected activity and the adverse action.  *See id.*

It is undisputed that Foley has sufficiently pled the first two elements of a Section 1790b claim.  The First Amended Complaint alleges that Foley provided information to the NCUA regarding a possible violation of the law by a credit union employee, thus satisfying the first element requiring a plaintiff to plead that he engaged in an activity protected by the statute.  By claiming that CCFCU terminated his employment, Foley has met the low hurdle of the second prong with allegations that he suffered an adverse employment action.  It is the third element—a causal connection—where the rubber hits the road.

CCFCU argues that the First Amended Complaint must be dismissed under Rule 12(b)(6) because Foley has failed "to plead *any facts* even suggesting a connection between his reports to the NCUA to any adverse employment action."  Dkt. 18 at 7–8.  Focusing on the 17-month time period between the date Foley first reported information to the NCUA regarding possible violations of the law (the protected activity) and the date of his termination (the adverse action), CCFCU maintains that this lengthy gap in time negates any inference of causality.

In support of its claim that the operative complaint does not establish the necessary causal link between Foley's protected activity and the adverse employment action, CCFCU points to a number of cases holding that an intervening period of several months between

alleged protected activity and alleged retaliation is legally insufficient to support a causal connection. *See, e.g., Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 397 (5th Cir. 2012) (7 month gap insufficient); *Ameen v. Merck & Co., Inc.*, 226 F. App'x 363, 376 (5th Cir. 2007) (11 month gap insufficient); *Harvey v. Stringer*, 113 F. App'x 629, 631 (5th Cir. 2004) (10 month gap insufficient); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (five month gap insufficient); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (10 month gap insufficient); *Armstrong v. Marathon Petro. Co., LP*, No. 3:16-CV-00115, 2018 WL 2976732, at *10 (S.D. Tex. May 1, 2018) (three to four month gap insufficient); *Williams v. Cytec Indus.*, No. 04-761, 2005 WL 94858, at *9 (E.D. La. Jan. 14, 2005) (17 month gap insufficient).  The cases cited by CCFCU are easily distinguishable, as they were all decided on summary judgment or post-trial, well after the parties had been able to conduct meaningful discovery to unearth the underlying factual record.  In stark contrast, the instant case is at the preliminary motion to dismiss stage, where my sole role is to determine if Foley has sufficiently stated a claim that will allow him to proceed with discovery.  *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007) ("[A] 12(b)(6) inquiry focuses on the allegations in the pleadings, not whether a plaintiff actually has sufficient evidence to succeed on the merits.").

At the motion to dismiss stage, it is premature to throw out a case solely on the basis that there is a lack of temporal proximity between the protected activity and the termination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (holding that the employment discrimination prima facie case is "a flexible evidentiary standard" not a "rigid pleading standard"); *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 25

6

(1st Cir. 2014) (explaining that a court considering a Rule 12(b)(6) motion should not simply engage in a "rote evaluation of [a] time lag" in evaluating the sufficiency of a retaliation claim, but instead must read the "complaint holistically and" take into account "relevant context").  As the First Circuit eloquently explained in a Title VII case in which the defendant sought to dismiss a case under Rule 12(b)(6) for failure to show a causal connection:

> The parties have directed us to no case dismissing a Title VII retaliation claim under Rule 12(b)(6) utilizing only a temporal analysis to defeat causation allegations.  Once a complaint has alleged enough facts that retaliation for protected conduct is *plausible*, the plaintiff is entitled to proceed to discovery.  And discovery might unearth evidence of retaliation such that at summary judgment or trial, the plaintiff will not have to rely heavily on the "temporal proximity" between protected conduct and adverse actions to prove her case.

*Garayalde-Rijos*, 747 F.3d at 25 n.8 (citation omitted).

The Fifth Circuit has also rejected efforts to focus exclusively on the time between the protected activity and the adverse employment action, finding that such an approach elevates form over substance.  *See Starnes v. Wallace*, 849 F.3d 627, 634–35 (5th Cir. 2017).  The "causal link" element of the prima facie retaliation case is aimed at the ultimate question: "whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in" protected conduct.  *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).  As a result, temporal proximity is "part of [the] analysis, but not in itself conclusive of [the] determination[] of retaliation."  *Gee v. Principi*, 289 F.3d 342, 346 n.3 (5th Cir. 2002) (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)).  Looking solely at temporal proximity to establish causation at the pleading stage runs directly

counter to the Supreme Court's edict that "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks and citation omitted).

Here, the allegations in the operative complaint involve much more than the simple assertion that CCFCU terminated Foley 17 months after the date he reported violations of law to the NCUA.  Foley avers that the impetus for his termination was the CCFCU Board members' dissatisfaction with having to face significant write-offs starting in late 2018 and continuing monthly throughout 2019.  These charge-offs came about as a direct result of Foley's reporting fraudulent activities to the NCUA.  It is Foley's contention that the CCFCU Board was furious at him for reporting possible violations of law, thus triggering the mandated charge-offs that negatively impacted CCFCU's bottom-line.[2]  In November 2019, approximately one month after CCFCU's Board complained in a written evaluation that CCFCU's net worth had dropped as a result of the charge-offs, Foley lost his job. Foley claims that CCFCU terminated his employment because he reported possible violations of the law to the NCUA.

Keeping in mind that the purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the case, I conclude that Foley has, at this time, pled sufficient facts showing a causal chain between his protected activity and his

---

[2] For example, Foley alleges that some board members consistently voted against the mandated charge-offs and became "visibly upset, shaking their heads and staring at Foley with a disgusted expression" anytime the issue of charge-offs came up in board meetings. *See* Dkt 11 at 5–6. Foley further alleges that board members consistently failed to realize the necessity of making the charge-offs while simultaneously refusing to give Foley authorization to report fraudulent activity to the authorities for a criminal investigation.  *See id.* at 6.

termination.  *See Starnes*, 849 F.3d at 635 (finding a fact issue as to causation despite the lapse of one year between the protected activity and termination because the employer felt the brunt of the consequences of the protected activity just two months prior to the termination); *Gee*, 289 F.3d at 348 (holding that the plaintiff had created a fact issue on causation although the adverse action occurred two years after the plaintiff's protected activity).  It is now time for the parties to proceed to the discovery phase of the case, with the understanding that I am certainly willing to revisit the causation issue on summary judgment.  That, in my view, is the proper time to conduct a deep dive and determine what evidence, if any, demonstrates a link between the protected activity and the adverse employment action.

**B.     Does Section 1790b Authorize an Award of Attorney's Fees to a Prevailing Plaintiff?**

In addition to actual monetary damages, Foley seeks to recover attorney's fees from CCFCU.  Under the so-called "American Rule," each party must ordinarily pay its own attorney's fees unless there is "explicit statutory authority" that provides for the recovery of attorney's fees from the other side.  *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994).  I must, therefore, turn to the text of Section 1790b to determine whether Foley may recover attorney's fees.  Section 1790b provides that the district court:

> may order the credit union or the Administration which committed the violation-
>
> > (1) to reinstate the employee to his former position,
> > (2) to pay compensatory damages, or
> > (3) take other appropriate actions to remedy any past discrimination.

12 U.S.C. § 1790b(c).  Notably absent from this list is any specific authorization for attorney's fees to a successful plaintiff.  In many other whistleblower statutes, Congress has included statutory language that expressly authorizes fee shifting.  *See, e.g.*, 15 U.S.C. § 2622(b)(2)(B) (Toxic Substances Control Act whistleblower provision) (employee-whistleblower may recover "all costs and expenses (including attorney's fees) reasonably incurred"); 42 U.S.C. § 9610(c) (Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERLCA") whistleblower provision) (employee-whistleblower may recover "all costs and expenses (including the attorney's fees)"); 10 U.S.C. § 2409(c)(1)(C) (National Defense Authorization Act whistleblower provision) (whistleblower entitled to receive "an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred").  The fact that Congress did not expressly include such fee shifting language in Section 1790b is conclusive evidence that it did not intend for a prevailing party to recover attorney's fees.  *See Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 262 (1975) ("[T]he circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine.").

Foley cannot point to a single case from anywhere in the country—from sea to shining sea—that has awarded attorney's fees to a prevailing plaintiff under Section 1790b(c).[3]  This is hardly surprising.  The statute simply does not allow an award of

---

[3] Foley asserts that "[t]he only district court within the Fifth Circuit to consider the issue of whether attorney's fees may be sought under 12 U.S.C. §1790b denied the defendant's motion to preclude the Plaintiff from seeking his attorney's fees.  *Schroeder v. Greater New Orleans Fed. Credit Union*, CIV.A. 09-3647, 2012 WL 6020228, at *5 (E.D. La. Dec. 3, 2012)."  Dkt. 20 at 11.  This

attorney's fees.  It is noteworthy that several courts have looked at the Federal Deposit Insurance Act, 12 U.S.C. § 1831j(c), which shares an identical remedy provision as Section 1790b, and held that such language does not authorize the award of attorney's fees to a prevailing plaintiff.  *See Haley v. Fiechter*, 953 F. Supp. 1085, 1096 (E.D. Mo. 1997); *Primes v. Parish Nat'l Bank*, No. 93-3737, 1995 WL 241853, at *9–10 (E.D. La. Apr. 24, 1995).

Foley claims that Section 1790b(c)'s broad language allowing a district court to "take other appropriate actions to remedy past discrimination" should be interpreted to permit the award of attorney's fees in certain situations.  This argument is foreclosed by the Supreme Court's *Key Tronic* decision.  In *Key Tronic*, the Supreme Court held that attorney's fees were not recoverable under a statutory provision in CERLCA allowing an award of the "necessary cost of response," which includes the cost of "enforcement activities."  511 U.S. at 818.  To allow for an award of attorney's fees, a statute must "evince[] an intent to provide for such fees. . . .  Mere generalized commands, however, will not suffice to authorize such fees."  *Id.* at 815 (internal quotation marks and citation omitted).  Given the Supreme Court's "adherence to a general practice of not awarding fees to a prevailing party absent explicit statutory authority," *id.* at 819, Section 1790b(c)'s pronouncement that a federal court may "take other appropriate actions to remedy past

---

statement is completely misleading and dead wrong.  In truth, *Schroeder* did not address the propriety of attorney's fees under Section 1790b at all.  The district court simply allowed the plaintiff to proceed with Louisiana state law claims, which expressly provided for an award of attorneys' fees.

discrimination" does not come close to authorizing the recovery of attorney's fees. Accordingly, I recommend that Foley's claim for attorney's fees under Section 1790b be dismissed.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons stated above, I recommend that the Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.  More specifically, I recommend that (1) CCFCU's attempt to dismiss the Section 1790b claim in its entirety should be denied; and (2) CCFCU's request to dismiss Foley's claim for attorney's fees under Section 1790b be granted.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 21st day of September, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE